CASE 14.—ACTION BY JOEL H. WARD AGAINST THE PULL-
        MAN.CAR CORPORATION AND OTHERS INVOLV-
        ING THE RIGHT OF DEFENDANT TO REMOVE
        THE CASE TO THE UNITED STATES COURT.—
        December 18.

## Ward v. Pullman Car Corporation

Appeal from Kenton Circuit Court.

W. McD. Shaw, Circuit Judge.

From an order removing the case to the Circuit
Court of the United States, plaintiff appeals.—Re-
versed.

1.  Master and Servant—Injuries to Servant—Servant's Personal
    Liability.—Plaintiff, a railroad brakeman, was injured by the
    separation of a brake staff weld.  The petition charged that
    it was the duty of defendants, car inspectors, to inspect
    cars like that from which plaintiff was thrown, and that, if
    they had properly inspected the car and brake staff, they
    would have discovered the defect, but that they made their
    inspection with gross and wanton carelessness, and approved
    the car as safe for operation, and that plaintiff was injured
    while attempting to set the brake in the ordinary manner
    by the separation of the two pieces of the staff.  Held, that
    such allegation charged more than mere nonfeasance on the
    part of the inspectors, and stated a cause of action against
    them individually.
2.  Parties—Defendants—Joinder.—Where two car inspectors in
    inspecting the car in question and in approving it acted for
    the railroad company, their act was the act of the latter, so
    that both the inspectors and the railroad company were
    properly joined in an action for injuries to a brakeman re-
    sulting from negligent inspection.
3.  Removal of Causes—Jurisdiction of State Court—Termination.
    —The provision of the removal acts that it shall be the duty

of the state court to accept the petition and bond for removal and proceed no further in the suit has no application to a suit that could not have been originally brought in the United States Circuit Court because plaintiff and two of the defendants were citizens of the state.

4. Same—Parties—Fraudulent Joinder.—Where an action could not have been originally brought in the federal Circuit Court, the removal acts do not require the determination of a question of alleged fraudulent joinder of parties by the federal court after the filing of a removal petition and bond.

5. Same—Fraudulent Joinder.—A joinder of parties cannot be fraudulent for the purpose of defeating federal jurisdiction where it is authorized by the laws of the state where the suit is brought.

6. Same—Removal Petition—Parties—Fraudulent Joinder.—In a suit for injuries to a brakeman by the separation of a defective brake staff, plaintiff joined the railroad company and the manufacturer of the car, who were nonresidents, and two of the railroad's car inspectors who were residents of the state. The petition alleged a cause of action against the inspectors, but a removal petition, without denying that the inspectors were such, or that they approved the car, alleged that no cause of action existed against them, that they had nothing to do with the matters alleged in the petition nor with the defective brake staff, and that they were not in any manner responsible therefor. Held, that such allegations were insufficient to show that plaintiff had no cause of action against the inspectors, and that they were therefore fraudulently joined to prevent a removal of the cause.

7. Same—Denial of Removal—Effect.—Where a petition for removal of a cause is denied, and it thereafter becomes apparent to the court at any time that the resident defendant has been joined without reasonable grounds therefor, it is the court's duty in its discretion to set aside the former order and direct a removal of the cause.

MYERS & HOWARD for appellant.

There can be no question that a joint cause of action exists against all persons contributing directly to an injury, and the injured person has the right to elect to prosecute all or one or more of the wrongdoers contributing thereto.

Ward v. Pullman Car Corporation, &c.

## CITATIONS.

Hundirk v. Louisville Elevator Co., 29 Ky. Law Rep. 193; Standard Oil Co. v. Parish, 145 Fed. Rep. 829; Shubert v. Clark & Co., 15 L. R. A. (Minn.) 818; Heaven v. Pendar, 11 Q. B. Div. 503; Huset v. J. I. Case Threshing Machine Co., 57 C. C. A. 237 (120 Fed. Case 865); Winston v. I. C. Ry. Co., 32 Ky. Law Rep. 1283; Pugh v. C. & O. Ry. Co., 101 Ky. 77; White's Admr. v. St. L. & N. O. Ry. Co., 29 Ky. Law Rep. 1062; Rutherford v. I. C. Ry. Co., 27 Ky. Law Rep. —.

GALVIN & GALVIN for appellee.

## AUTHORITIES CITED.

1. Fraudulent joinder.    (Alabama Great Southern Ry. Co. v. Thompson, 200 U. S. 206; McGuire v. Great Northern Ry. Co., 153 Fed. Rep. 434, bottom page 439; Wecker v. National Enameling & Stamping Co., 204 U. S. 176; Atlantic Coast Ry. Co. v. Bailey, 151 Fed. Rep. 891, bottom page 892; Stone v. South Carolina, 117 U. S. 432, 29 Lawyers' Ed. 962; Kansas City, &c., Ry. Co. v. Daughtry, 138 U. S. 303; 34 Lawyers' Ed. 963; Burlington, &c., Ry. Co. v. Dunne, 122 U. S. 513, 30 Lawyers' Ed. 1159; I. C. R. R. Co. v. Coley, 28 Ky. Law Rep. 336, at 341; Pierce v. I. C. R. R. Co., 27 Ky. Law Rep. 801; Dudley v. I. C. R. R. Co., 29 Ky. Law Rep. 1029.)

2. No cause of action stated against resident defendants.    (C., N. O. & T. P. Ry. Co. v. Robertson, 115 Ky. 858; Slaughter v. N. C. & St. L. Ry. Co., 28 Ky. Law Rep. 1195; Ayles v. Southern Ry. Co., 28 Ky. Law Rep. 29; Davis v. C. & O. Ry. Co., 25 Ky. Law Rep. 342; Westinghouse Elec. Co. v. Heimlich, 127 Fed. 92; I. C. R. Co. v. Coughlin, 132 Fed. 801; Shandrcw v. C., St. P. & M. Ry. Co., 142 Fed. 320; R. & D. R. R. Co. v. Elliott, 149 U. S. 465; T. & P. Ry. Co. v. Barrett, 166 U. S. 617; Chicago, St. Louis & Pittsburg Ry. Co. v. Fry, 131 Fed. 330; Louisville, &c., Ry. Co. v. Bates, Admr., 146 Ind. 564; Read v. N. Y. & N. H. Ry. Co., 20 R. I. 209; L. & N. R. R. Co. v. Campbell, 97 Ala. 147; Warax v. C., N. O. & T. P. Ry., 72 Fed. 637; Hukill v. M. & B. S. Ry. Co., 72 Fed. 745; Creagn v. Equitable Life Ins. Society, 88 Fed. 1; Helms v. Northern Pacific Ry. Co., 120 Fed. 389; Prince v. Ill. Cent. R. R. Co., 98 Fed. 1; Gatelman v. Peoria, &c., Ry. Co. 82 Fed. 790; Atlantic Coast Line Ry. Co. v. Bailey, 151 Fed. 891; Evansberg v. Insurance Stove Range & Foundryy Co.—Decision by Judge Cochran of U. S. Circuit Court, E. D. of Kentucky, August 25, 1908.)

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Joel H. Ward brought this suit against the Pullman Company, the Cincinnati, New Orleans & Texas Pacific Railway Company, Henry Drayman, and Mike Glenn. The Pullman Company is a corporation under the laws of the State of Illinois. The railroad company is a corporation under the laws of the State of Ohio. Henry Drayman and Mike Glenn are two employes of the railroad company, and citizens of Kentucky. The Pullman Company and the railroad company filed their petition asking that the case be removed to the circuit court of the United States. The court ordered the removal, and the plaintiff appeals.

It is insisted for the appellees that the circuit court ruled correctly: First, because there was a fraudulent joinder of the two resident defendants, and that this question is cognizable only in the United States court; second, because no cause of action is stated against the resident defendants. The petition charged, in substance, these facts: Henry Drayman and Mike Glenn were car inspectors in the service of the railroad company. It was their duty as such severally to examine and inspect freight cars arriving at and departing from the yards of the defendant at Ludlow, Ky., for the purpose of discovering, reporting, and causing to be repaired any defect in any car so that such car and its appliances and attachments could be made safe for the trainmen in the employ of the railroad company to operate. On April 27, 1907, there was in the yard for inspection and for transportation to another point a certain gondola car equipped with the usual hand brakes, consisting of an upright iron

staff, cogwheels, and other usual parts. The iron brake staff was defective and dangerous to operate. It was in an unsafe condition. It was the duty of Glenn and Drayman to inspect the car, its appliances, and attachments, including the brake, ascertain its condition, if out of repair or unsafe, before the car was placed in operation or turned over to the employes of the railroad company to be made a part of a train. The plaintiff was at that time a brakeman in the employ of the railroad company. Glenn and Drayman inspected the train of cars on which the gondola car was then a part and inspected that car, but they made the inspection with gross and wanton carelessness, and approved the car as in good and safe condition to be operated, although it was then and there in a defective and dangerous condition; the iron brake staff of the car being in such condition that in using it to apply the brakes on the car a slight pressure would cause it to fall apart at a point where it should have been welded together. This all of the defendants well knew or could by the exercise of ordinary prudence have known. The dangerous condition of the car could have been discovered by the most ordinary test. The Pullman Company constructed the car for the railway company under a contract with it. It was aware at the time it constructed the car and delivered it to the railway company that it contemplated the use of the car on its railway by its employes for general traffic; and knew and contemplated that the employes of the railway company would in the use of the car necessarily apply the brakes on the car in the usual way by twisting on the brake rod when necessary to set the brake. The Pullman Company knew that, unless the iron brake rod was securely welded, it would fall apart upon the application of the necessary twisting force,

and would most likely throw the person applying the brake from the car, and that the brakes would be necessarily applied while the car was in motion. Nevertheless the Pullman Company constructed and delivered the gondola car to the railway company with the brake staff having only a semblance of a weld, and in such condition that it would fall apart upon the application of sufficient force to apply the brakes on the car. The Pullman Company could have known by an ocular inspection of the brake staff that it was not welded, and could have discovered by the most commonplace test that it would fall apart; but with gross and wanton negligence it fraudulently caused the imperfect and incomplete weld which was apparent and obvious without paint to be painted over so as to partly conceal its imperfections, and in that condition delivered it to the railroad company, who placed it in operation upon the train, without any test whatever or any other inspection than the pretended inspection of Glenn and Drayman. On that day, while in the pursuit of his duties as a brakeman, he was commanded by the yard-master to go upon this car, and while upon the car, obeying the directions of his superior in setting the brakes when it was being switched, it was necessary for him with both hands to take hold of the wheel at the top of the brake staff, and apply the necessary twisting force to set the brake, whereupon the iron brake staff suddenly and without fault on his part, owing to its defective condition, separated into two pieces and fell apart at the place where it was not properly welded, thereby he was thrown from the car and run over by it, receiving permanent and serious injuries to his damage in the sum of $50,000.

We will take up the second question first. Does the petition state a cause of action against the resident

defendants, Henry Drayman and Mike Glenn, which is sufficient to warrant a judgment against them if they were the only defendants sued? In Cincinnati, etc., R. R. Co. v. Robertson, 115 Ky. 861, 74 S. W. 1061, 25 Ky. Law Rep. 265, after referring to the rule laid down in some jurisdictions that where the injury results to some third person because the servant failed to act, the servant is not personally liable, though the master is, this court said: "Whether this doctrine in its fullest extent can be sustained in sound reason it is unnecessary for us to examine. Whether the nonfeasance of Brown was a negative act, in that it was a failure to do what he had undertaken to do, and therefore had done it imperfectly, we are relieved from considering by the state of the pleadings and of the record; for it is not charged that Brown had it in his power to do anything other than exactly what he did." Dudley v. I. C. R. R. Co., 127 Ky. 221, 96 S. W. 835, 13 L. R. A. (N. S.) 1186, 29 Ky. Law Rep. 1029, rests on a similar state of facts that is, it rests upon the ground that the servant there had done all that was in his power. There is a sharp conflict in the authorities as to whether a servant is liable to a third person for nonfeasance, and as to what is nonfeasance within the meaning of the rule. See Mayer v. Thompson, etc., R. R. Co., 104 Ala. 611, 16 South. 620, 28 L. R. A. 433, 53 Am. St. Rep. 88, and note; Ellis v. Railroad Co., 72 S. C. 465, 52 S. E. 228, 2 L. R. A. (N. S.) 378; McGinnis v. Railroad Co., 200 Mo. 347, 98 S. W. 590, 9 L. R. A. (N. S.) 880, 118 Am. St. Rep. 661, and cases cited. As to what the true rule is we are not required in this case to decide. The petition here charges more than a mere nonfeasance. The cars could not go out on the road until they were inspected and passed inspection. When the inspectors

inspected the cars and approved them, they went out on the road. Their approval sent the cars out on the road for the use of the trainmen, and, if they sent a car out which was defective, and which they knew or by ordinary care could have known was defective, they are as fully liable to the brakeman who was injured by reason of this as if they had with their own hands handed him a wrench telling him it was safe and proper to be used, when it was in fact in a dangerous condition; and they either knew this or could have known it by ordinary care in such inspection as they were required to make. They did not deliver the car by their own hands to the brakeman, but they approved it, and their approval put the car in the hands of the brakeman. It is not a case of mere failure to act, but it is a case of one who was charged with the duty of seeing that the car was safe before delivering it to another to be used with actual knowledge that if it was unsafe it would endanger his life; for they must be charged with knowing what they should have known by the exercise of ordinary care when they made the inspection and passed the car. If they had not inspected the car at all, and had not approved the car in any way, they would have done no positive act, and a different question would be presented. We therefore conclude that, if they were the only defendants to the action, a recovery might be had against them under the allegations of the petition. Huset v. Conn. Threshing Machine Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303; Coughtry v. Globe Woolen Co., 56 N. Y. 124, 15 Am. Rep. 387; Bishop v. Weber, 139 Mass. 411, 1 N. E. 154, 52 Am. Rep. 715; Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455; Lough v. John Davis & Co., 30 Wash. 204, 70 Pac. 491, 59 L. R. A. 802, 94 Am. St. Rep. 848; Baird v. Ship-

man, 132 Ill. 16, 23 N. E. 384, 7 L. R. A. 128, 22 Am.
St. Rep. 504; and cases cited in notes thereto. As
they inspected the car for the master, their approving
the car, and sending it out on the road, was the act
of the master, and he is also responsible therefor.
That in such cases the master and servant may be
sued jointly this court has held in a number of opin-
ions. Cincinnati, etc., R. R. Co. v. Cook, 113 Ky. 161,
67 S. W. 383, 23 Ky. Law Rep. 2410; I. C. R. R. Co. v.
Houchins, 121 Ky. 526, 89 S. W. 530, 29 Ky. Law Rep.
499, 1 L. R. A. (N. S.) 375; New Ellerslie Fishing
Club v. Stewart, 123 Ky. 8, 93 S. W. 598, 29 Ky. Law
Rep. 414, 9 L. R. A. (N. S.) 475, and cases cited.

The remaining question is: Was the question of
fraudulent joinder only cognizable in the circuit court
of the United States? In I. C. R. R. Co. v. Coley, 121
Ky. 394, 89 S. W. 234, 237, 28 Ky. Law Rep. 336, 1 L.
R. A. (N. S.) 370, we said: "By the act of Congress
(Act March 3, 1875, c. 137, section 2, 18 Stat. 470 [U.
S. Comp. St. 1901, p. 509]), a case may only be re-
moved to the Federal court where the defendant or
defendants therein are non-residents of the State.
Where there is a joint controversy, and one of the
defendants is a resident of the State, the other defend-
ant can not remove the case to the Federal court. It
is earnestly argued that if all the plaintiff has to do is
to join with the defendant a third person who is a res-
ident of the State, and that this will in all cases defeat
the right of removal, then no cases may be removed,
and the purpose of the act may be defeated entirely.
On the other hand, if a non-resident defendant may
simply plead to the merits of the case in the petition
for removal, and then take the case to the Federal
court for the trial of the issue thus tendered, all cases
may be removed to the Federal court, notwithstanding

the provision of the act of Congress forbidding the removal of causes where there is a joint controversy and one of the defendants is a resident of the State. To illustrate: In this case it is earnestly maintained, although there has been a verdict and judgment against Kotheimer, and although the evidence in the record is sufficient to sustain the judgment, that the case should have been transferred to the Federal court. The effect of this would be to give the Federal courts jurisdiction of the merits of the case in actions of this sort, although such jurisdiction is expressly withheld by the act of Congress. The State court has jurisdiction to try the merits of the case if there is a joint controversy, and it will not do to say that the action must be transferred to the Federal court for that court to determine whether the State court may try the case on the merits. When the plaintiff's petition states a joint cause of action against two defendants, there is a controversy within the meaning of the act of Congress. It was not contemplated by the act that the petition for removal should go into the merits of the controversy, and by putting in issue the allegations of the plaintiff's petition one of the defendants might remove the case from the State court." In I. C. R. R. Co. v. Houchins, 121 Ky. 530, 89 S. W. 530, 532, 29 Ky. L. R. 499, 1 L. R. A. (N. S.) 375, having before us the same question, we again said: "The plaintiff's petition stated a cause of action within the jurisdiction of the State court. The joint cause of action so stated by him in his petition was not removable to the Federal court under the act of Congress. The court had no jurisdiction over the case, and any order it made in a case of which it had no jurisdiction was void. Consent can not confer jurisdiction, and, if the railroad company had been beaten in that court, it

might at the end of the litigation have raised the question of jurisdiction. It was not contemplated by the act of Congress (Act March 3, 1875, c. 137, section 2, 18 Stat. 470 [U. S. Comp. St. 1901, p. 509]) that every case, whether removable or not, should be subject to the control of the Federal courts. If the course urged in this case is to be approved, then every case to which a non-resident is a party, although liable jointly with the others, may be removed to the Federal court. The action was properly brought in the State court. That court admittedly had jurisdiction, and it certainly can not be maintained that it should have surrendered jurisdiction over the case and sent it to a court for trial which on the face of the papers was without jurisdiction to make any order in it. Is this action, which confessedly lies in the State court under the laws of the State, to be controlled by the Federal court, and may that court, if of opinion that a joint action does not lie, take jurisdiction of the case? Such a rule would deprive the litigant of his right to try his case under the laws of the State, and would compel him to go into the merits of his case before a tribunal without jurisdiction to sit in it. If the State court makes a mistake, an appeal may be taken to this court; and, if the railroad company feels aggrieved by the decision of this court, it may in every case prosecute an appeal to the Supreme Court of the United States on the question. So it is not without remedy, and there is no possibility of its rights not being properly protected.''

It is provided by the act of Congress (Act March 3, 1875, c. 137, section 2, 18 Stat. 470 [U. S. Comp. St. 1901, p. 509]) that suits of a civil nature, which by the act may be brought in the circuit court of the United Statutes, may be removed to that court from the State

court on the petition of the defendant; and the act provides that, when the petition and bond are filed, "it shall then be the duty of the State court to accept said petition and bond and proceed no further in such suit." But this is not a suit which could have been brought originally in the circuit court of the United States, for the reason that the resident defendant could not properly be sued in that court, and therefore the provision of the statute that it shall be the duty of the State court to accept the petition and bond and proceed no further in the suit does not apply to this action. We are aware that the Supreme Court of the United States has held that where there is a suit which might have been brought in the first instance in the circuit court of the United States, and a petition and bond is filed for a removal from the State court to that court, any issues of fact made upon the petition must be determined in the circuit court of the United States. But this ruling rests upon the provision of the statute that, when the petition and bond are filed, the State court shall proceed no further in the suit, which vests the jurisdiction from that time in the United States circuit court. But there is nothing in the statute giving the United States circuit court jurisdiction of cases which might not properly be brought in that court in the first instance; and to hold that such cases are to be removed to the United States circuit court for the trial of the question of fraudulent joinder is to divest the State courts of jurisdiction without any statutory provision to that effect. Undoubtedly Congress might so provide, but until Congress does so provide the jurisdiction of the State courts remains. The wisdom of this rule is aptly shown by the fact that the State courts administer the laws of the State; a cause of action may exist

as held by the State courts under its laws, which would not be recognized by the United States circuit court; and, when the case is appealed from the court of last resort of the State to the United State Supreme Court, that court recognizes the construction of the State laws adopted by the court of last resort in the State. To illustrate, this court has steadily held that the master and servant may be jointly sued by a person injured by the negligence of the servant where the negligence of the servant is the negligence of the master. But the circuit court of the United States in this State in several cases held that the master and servant in such a case can not be sued jointly, and that it is a fraudulent joinder where the master and servant are sued jointly. Had these cases been tried in the State court, the United States Supreme Court on appeal would have followed the construction of the State laws adopted by the State supreme court. The question whether the joinder is proper or not is often a question of law upon which men may differ. It depends upon the law of the State under which the action is brought; and it was certainly not contemplated by the act of Congress that a case not within the jurisdiction of the United States circuit court should be removed from the State court to that court for it to determine whether the resident defendant under the allegations of the petition was liable under the laws of the State to the plaintiff. A joinder can not be fraudulent which is authorized by the laws of the State under which the suit is brought. While the petition for removal in this case charges that Drayman and Glenn were fraudulently and illegally joined, its allegations on the subject are as follows: "Your petitioners say that no cause of action is stated in plaintiff's petition against either the said Henry Drayman or the said Mike

Glenn, and that no cause of action exists against either said Drayman or said Glenn in favor of plaintiff, and that the said Drayman and Glenn had nothing whatsoever to do with the matters alleged and set out in the plaintiff's petition, and especially nothing whatsoever to do with the defective brake staff described in said plaintiff's petition, and were not in any way responsible therefor, and that the plaintiff well knew such to be the fact, but nevertheless wrongfully, improperly, fraudulently, and illegally joined the said Drayman and Glenn as defendants in said suit solely and only because of the fact that said Drayman and Glenn are citizens and residents of the State of Kentucky, and for the sole purpose of fraudulently, wrongfully, improperly, and illegally defeating the jurisdiction of the circuit court of the United States.'' It will be observed that no allegation of the petition is denied. It is not denied that Glenn and Drayman were inspectors or that they approved the car or passed it out for use on the road. The allegation that no cause of action exists, and that Drayman and Glenn had nothing whatever to do with the matters alleged in the petition, and especially nothing to do with the defective brake staff and were not in any way responsible therefor, are simply conclusions of the pleader. If, upon such statements, the case may be removed for trial to the circuit court of the United States upon the merits, then there is no case that may not be removed under the act of Congress.

We have steadily held that, if at any time it becomes apparent to the court that the resident defendant was joined without reasonable grounds therefor, the court should set aside the order refusing to remove the case, and enter an order removing it to the circuit court of the United States. The court may do this at

any time the fact appears, and he may in his discretion hear the matter before the final trial of the action. When the matter is to be heard, it is like other similar questions arising on motions in the progress of the case—one resting in the discretion of the court.

Judgment reversed and cause remanded, with directions to the circuit court to set aside the order of removal, and for further proceedings consistent herewith.

JUDGE BARKER dissents.